Totten, J.
delivered the opinion of the court.
On the 3oth of June, 1850, the defendants, John Rolland and Sarah his wife, executed to Benjamin Carter a deed in full for ■ all the property, real and personal, to which said Sarah was entitled, under the will of Benjamin Carter of Camden, S. C, upon the following trusts, that is to say : “ For the use and benefit of the said John and his wife Sarah, and to enable them the better to maintain and educate their children, which have been, or hereafter, may be lawfully begotten on the body of the said Sarah; and after the death of the said Sarah, the said Benjamin Carter doth' here *334 by covenant and agree to and with the said John Rolland and Sarah, in consideration of the premises, that he will divide, or canse to be divided, all the residue of said estate hereby conveyed, or intended to be conveyed, which then remain in the hands of said Benjamin, whether the same should consist of real or personal property, between the lawful heirs of said Sarah, lawfully begotten on her body ; and that said division shall be as nearly equal as may be practicable, share and share alike ; and it is further understood by the contracting parties, that the said Benjamin Carter shall pay due attention and care, in the laying out and managing said fund, to the education and necessary instruction of the children of said John and Sarah his wife, and to all necessary things to advance the interest of said estate, hereby bargained and sold, for the purposes above mentioned. ”
Benjamin Carter assumed the trust, and received the fund from the executors of Benjamin Carter, deceased, amounting to the sum of four thousand and eighty-eight dollars and fourteen cents. The defendant Rolland was, at the time, very poor if not insolvent; he had a family of children, now seven in number; his habits were dissipated and improvident. This fund was the gift of a relative to defendant Sarah, and the object and design of the trust, were to prevent the property from coming into the hands and power of said John Rolland, who would most probably have wasted it, and have left his family destitute. The trustee, upon the advice and consent of the beneficiaries, invested a considerable portion of the fund in slaves and land, farming stock and material, and placed defendants in possession. They had the free use and profits of the fund so invested for their support and subsistence, and for the support and maintenance of their children.
The trustee alledges, that the balance of the fund was used and consumed in the necessary support and maintenance of *335 the family, and in the maintenance and education of the children; and it would seem from the reports made in the suit, that the fund remaining after the purchase of the slaves, land and necessary stock for the farm, as before stated, was in fact, used and applied for the benefit of defendants and their children.
One of the slaves, Jim, alledged to be of bad and unmanageable habits and character, was sold by defendant John Rolland, and removed from the State. As to this sale, the trustee insists, that it was without his knowledge or consent; that he was unable to recover or discover the slave, or to get the proceeds into his possession ; and it is further insisted, in exoneration of the trustee in this respect, that the sale was proper, if the manner of it had not been improper, and that the proceeds were in fact used and applied, by said defendant, in the necessary support and maintenance of the beneficiaries, under the trust.
It is alledged, that after a considerable portion of the fund was invested as before stated, and defendants placed in possession, the said John reformed in his habits, and became prudent, industrious and attentive to his family, and so continued for many years, until a short time before this suit was instituted, when he relapsed into his former vices and habits, and became an unsafe person to have an estate in his possession .and power.
This bill is, therefore, brought by the trustee and all the children, to take the trust property out of defendant’s possession, and to compel him to account for the slave, Jim, and any other part of the property that may have been wasted by him; and the trustee prays, that he may be permitted to resign the trust.
There was a decree for an account, and upon the coming in of the report, on the 9th April, 1850, it was excepted to and set aside, and the former decree modified as follows : “ That *336 the clerk and' master take and state an account with the trustee, Benjamin Carter, charging him with the corpus of the trust fund, and allowing him credit for all the negroes, purchased by him; for the stock purchased and placed upon the farm; that he also allow him credit for $399 69, being the trustee’s interest in said tract of land; and that he charge him the value of the negro, Jim, at the time Rolland converted him, and that he allow him credit for furniture furnished Rolland and wife, if any. ”
Upon the coming in of the report, under this decree, on the 16th October, 1850, it was excepted to on various grounds :— 1st. It was not in accordance with the original decree, or authorized by any legal and proper decree : 2d. That it improperly charged the trustee with the value of the slave, Jim : 3d. That it improperly charges the trustee with the corpus of the estate, and allows no credits for money paid for the maintenance of the beneficiaries; and it is farther excepted to for other reasons not material to be stated.
The exceptions were disallowed by the chancellor, and a decree made that the trustee pay to the children of said defendants $1564 80, the sum stated in the report; from which decree the trustee has appealed in error.
In the first place, it is material to ascertain the true construction of the deed, declaring the trusts. The first limitation is for the use and benefit of the defendants, and to enable them the better to maintain and educate their children ; this use continues during the life of said Sarah. The next limitation is, that at her death, all the residue of said estate which may then remain, shall be equally divided amongst the children of said John Rolland and Sarah his wife; the division to be made by the agency of the trustee. In the mean time, during the life of said Sarah, the trustee is to pay due attention and care, in the laying out and management of said fund, to the necessary instruction and education of the chil *337 dren,” and to do what may be necessary, in the management of the fund, so as to enable it the bettef to meet the objects of the trust; such is the plain and obvious reading of the deed.
Its effect is, to place the fund, during the life of said Sarah, where it will be most available for the benefit of defendants, and to enable them to maintain and educate their children. In the absence of any danger to the safety of the fund, the defendants have the right to its possession; they are not confined in the use of it, to its interest or its profits merely ; but are entitled to use the capital, the fund itself, so far as it may be necessary, in procuring their subsistence, and in maintaining and educating their children. For these objects, the whole fund, might be lawfully consumed, during the life of said Sarah, leaving nothing for the operation of the second limitation in the deed. It is only the residuum of the fund remaining at the death of said Sarah, that is to be divided amongst the children, after first applying the accruing profits of the fund, and portions of the fund itself, if necessary, to the use of the defendants for their own maintenance, and for the maintenance and education of their children. The only restriction is that the fund shall be prudently and judiciously applied to these purposes, and not be wasted or mis-appro-priated to other and different purposes or objects. It is the right of defendants to have the possession of the fund as invested, so as to enable them to have the use and benefit of it, for the purposes and objects appointed in the instrument creating the trust; but they may forfeit this right, if there is reasonable ground to apprehend that the fund will be mis-applied or wasted. They hold the possession under the supervision and control of the trustee, whose duty it is, so far as it may reasonably be done, to see that the fund is faithfully applied to the objects of the trust. In a case like this, the trustee is interposed principally to prevent waste and mis-appropria *338 tion. It is contemplated by the deed, that the defendants will maintain and educate the children, and they are to have the use of the fund, the better to enable them to perform this duty. It is true, that it is made the duty of the trustee, to see that the children shall have a benefit in the fund, for the purpose of education ; but this is only in aid of the higher obligation of the parents to perform the same duty, or to supply their omission, if they neglect it.
The deed contains no directions or restrictions as to the manner in which the fund shall be disposed of or invested; this is left to the discretion of the trustee and the beneficiaries ; and considering the state and condition of the family, we cannot say, but that it was a wise and judicious investment of the fund in land for a home, and in slaves and other means, to assist in its cultivation. There are certainly many other purposes of necessity and convenience to the beneficiaries, to which portions of the fund may likewise be applied, within the design and intention of the trust.
We think the construction we have given to the deed is manifestly in accordance, with the intention of the parties, at the time the trusts were declared; and we need hardly say, that it is the duty of a court of chancery, to follow the intention implicitly, where it is apparent, and not in contravention of public law or policy.
The powers, duties and responsibilities of trustees necessarily vary with the directions, limitations and restrictions contained in the instrument under which they assume to act; their general duty is, to do whatever may be necessary and proper, to give effect to the purposes contemplated by the trust; the intention of the instrument is to guide their action and to protect them in the performance of their duty.
In the present case, the decree charges the trustee with the corpus of the fund, and it is argued upon authority, that he is liable to that extent.
*339 It is a general rule, that trustees for infants cannot of their own authority, use the capital of the trust fund, either for the maintenance or advancement of the infant; and it is only in cases of evident necessity and propriety, that a court of chancery will authorize it to be done. Walker vs. Wetherell, 6 Ves. 473. Chaplin and Moore, 7 Monroe R. 170. Hester vs. Wilkinson, 6 Hum. R. 219. Hill on Trustees, 399.
This rule is applicable to guardians, executors and other trustees, having no authority in law or in fact to break in upon the corpus of the fund, for the supposed benefit of the infant. If the trustee appropriate the infant’s capital for his maintenance, education or advancement, he must be able to show in the instrument creating the trust, that he had power and authority to do so. Certainly, in very many cases, it might be a wise and judicious provision, to confer this power upon the trustee ; as where, from the small amount of the fund, its interest would be wholly inadequate to subsist and educate the infant.
Walker vs. Wetherell was the case of an executor upon whom the law confers no such power ; it may, to be sure, be conferred by will.
Hester vs. Wilkinson was the case of a trustee, created by deed, which required the trustee to hold the property in his care, custody and control, for the benefit and advantage of the tenant for life and of her children, and at her death, the same and its income, to go equally in remainder to her children. It is very evident from the terms of the instrument, that the estate thus limited in trust, consisting of land, slaves, and other property, was to be preserved in specie, and at the death of the tenant for life, the same, with its accumulations, was to go to those, entitled in remainder. It is no where intimated that the corpus of the estate itself might be used ; on the contrary, there is an express injunction on the trustee to keep the property in his custody and control, and to deliver the *340 same with its accumulations, to the remainder men, at the death of the tenant for life.
We consider this case, therefore, as coming strictly within the principle, to which we have alluded, and upon which it was decided. But neither it, nor the principle it illustrates, can have any application to the case now before us, because as we have seen, it was the intention of the deed, that the corpus of the fund might be used, and only the residuum remaining at the death of the first beneficiary, was to be divided amongst her children.
As to the nature and extent of the trustee’s liability to the beneficiaries, it is difficult, in the great variety of cases, to define it with any precise accuracy. Mr. Story was of opinion, that as the duties he assumes are gratuitous, and merely for the benefit of others, he should be bound only to good faith and reasonable diligence ; and by analogy to the case of- a gratuitous bailee, be liable only for gross negligence. 2 Story Eq. Jur. sec. 1269.
Lord Hardwicke declared, that if there is no mala fules, nothing wilful in the conduct of the trustee, the court will always favor him. Knight vs. Earl of Plymouth, 3 Atk. 480. 2 Spence Eq. Jur. 48.
It cannot be denied, however, but that there are many cases, in which this liberal view of the subject does not seem to have been taken; and in which, the trustees, being in possession of the fund, for the purpose of performing specific duties in regard to it, have been held to a rigid and strict account ; as in the case of guardians, executors and other trustees, charged with the possession and management of the fund.
But in another class of cases, where the trustee is invested with the legal title, and the beneficiaries are entitled to the possession of the fund, in whatever form it may be, the better to enable them to have the use and benefit ot it, the so- *341 verity of the rule, imposing liability upon trustees, should be, and is, greatly relaxed. Trusts of this description are of very common occurrence in family arrangements, where for the security and preservation of thé fund, it is conveyed in trust for the use of the beneficiaries, with the intention, that they should be left in the possession, use and enjoyment of it. The trustee has such powers and duties as the author of the trust may think proper to confer ; but his general duty is, to protect the trust fund or estate from waste or mis-appropriation. Certainly, in this class of cases, the trustee should be bound only to good faith and reasonable diligence, and be liable only for gross negligence.
In 2 Spence Eq. Jurisdiction, 936, it is said that the court will endeavor to deliver the trustee from any loss or injury that may arise from a mis-application of the trust money where it is done with the sanction of any one of the cestui que trust, who is mi juris ; and certainly where such person has himself wasted or mis-applied the fund, he can have no cause of complaint against the trustee.
It will be seen, therefore, that we consider the decree erroneous in the following particulars : it charges the trustee with the corpus of the fund; it charges him with the value of the slave, Jim, sold by defendant, Rollarid, when it should have ordered an inquiry to ascertain whether that slave was lost to the fund, by reason of any gross negligence in the trustee ; and the final decree is erroneous, because in addition to the errors carried into it, from the interlocutory decree, it orders the fund for which the trustee was held liable, to be paid to defendant’s children, whereas, by. the terms of the deed the defendants were to have the use of the fund during the life of the said Sarah Rolland, and then the balance, if any, was to be divided amongst the children. The decree will be reversed, and decree made in conformity to this opinion, ordering an account to be taken, &c. Decree reversed.